UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

DEREK KIRK,

          Plaintiff,

v.

CARSON COUNTY, *et al.,*

          Defendants.

3:13-cv-00490-MMD-VPC

**REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE**

This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4. Before the court is defendants' motion for summary judgment (#32), plaintiff's opposition (#43), and defendants' reply (#44). For the reasons that follow, the court recommends that defendants' motion be granted in part and denied in part.

### I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Derek Kirk ("plaintiff") is an inmate in the custody of the Nevada Department of Corrections ("NDOC"). Plaintiff is presently incarcerated at Lovelock Correctional Center in Lovelock, Nevada, but the present action arises out of plaintiff's confinement as a pretrial detainee at the Carson City Sheriff's Detention Facility ("CCDF") from March 14 to October 13, 2013. Pursuant to 42 U.S.C. § 1983, and as permitted by this court's screening order, plaintiff brings a First Amendment challenge to CCDF's "postcard-only" mail policy. (#14 at 3–4.) Carson County, the Carson City Sheriff's Department, Carson City Sheriff Ken Furlong ("Furlong"), and Carson City Sergeant Donald White ("White") are named as defendants. (*Id.*)

CCDF's postcard-only mail policy was implemented on November 25, 2012, and was in effect for the duration of plaintiff's stay at CCDF. (#32 at 4.) Under the policy, inmates' incoming and outgoing non-legal mail is restricted to 4" x 6" postcards. (#32-1 at 7–8.) Outgoing postcards must be pre-stamped, and are available for purchase from the CCDF

Commissary.[1] (*Id.* at 14.) Unauthorized incoming mail is inspected and placed in the inmate's property bag. (*Id.* at 6.) Mail is also placed in an inmate's property bag if the inmate is held in disciplinary segregation. (*Id.* at 15.) There is no limit on the number of postcards an inmate can send or receive. (*Id.* at 14.)

While at CCDF, plaintiff contends that he received an average of ten postcards a week and mailed an average of five postcards a week. (#43-1 at 2.) Some of the postcards he received did not have preprinted stamps. (*Id.* at 4.) In addition, plaintiff alleges that family members sent him unauthorized mail on multiple occasions, including educational materials, family photographs, a Bible, and a school report card, but that he neither received nor was notified of the mail and the items were not returned to their senders. (*Id.* at 2–3.) For these reasons and others, plaintiff asserts that the postcard-only policy violated his First Amendment right of free speech, and unduly burdened him and his family. (#13 at 3–4.) He seeks declaratory relief, compensatory and punitive damages, and costs. (*Id.* at 9.)

## II.   LEGAL STANDARDS

### A.   Summary Judgment

Summary judgment allows the court to avoid unnecessary trials. *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). The court properly grants summary judgment when the record demonstrates that "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). "[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be

---

[1] Defendants describe the policy as limiting outgoing *and incoming* non-legal mail to pre-stamped postcards (#32 at 4), but their supporting documents contain some ambiguity. According to the CCDF Inmate Information Handbook, outgoing postcards, which may be purchased from the commissary, must have preprinted stamps. (#32-1 at 14.) The same is not specified for incoming postcards, and, while "4x6 plain white postcard[s]" are required, return address labels are not barred. (*Id.* at 15.) CCDF's policy announcement also fails to explicitly state whether preprinted stamps are required on incoming postcards. (*Id.* at 6.) However, the announcement does list, among the items not allowed, postcards "with attached labels or stickers." (*Id.*)

1  counted." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).  A dispute is "genuine" only
2  where a reasonable jury could find for the nonmoving party.  *Id.*  Conclusory statements,
3  speculative opinions, pleading allegations, or other assertions uncorroborated by facts are
4  insufficient to establish a genuine dispute.  *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984
5  (9th Cir. 2007); *Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081–82 (9th Cir. 1996).  At this
6  stage, the court's role is to verify whether reasonable minds could differ when interpreting the
7  record; the court does not weigh the evidence or determine its truth.  *Schmidt v. Contra Costa
8  Cnty.*, 693 F.3d 1122, 1132 (9th Cir. 2012); *Nw. Motorcycle Ass'n*, 18 F.3d at 1472.

9  Summary judgment proceeds in burden-shifting steps.  A moving party who does not bear
10 the burden of proof at trial "must either produce evidence negating an essential element of the
11 nonmoving party's claim or defense or show that the nonmoving party does not have enough
12 evidence of an essential element" to support its case.  *Nissan Fire & Marine Ins. Co. v. Fritz
13 Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000).  Ultimately, the moving party must demonstrate, on
14 the basis of authenticated evidence, that the record forecloses the possibility of a reasonable jury
15 finding in favor of the nonmoving party as to disputed material facts.  *Celotex*, 477 U.S. at 323;
16 *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002).  The court views all evidence
17 and any inferences arising therefrom in the light most favorable to the nonmoving party.  *Colwell
18 v. Bannister*, 763 F.3d 1060, 1065 (9th Cir. 2014).

19 Where the moving party meets its burden, the burden shifts to the nonmoving party to
20 "designate specific facts demonstrating the existence of genuine issues for trial."  *In re Oracle
21 Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010).  "This burden is not a light one," and
22 requires the nonmoving party to "show more than the mere existence of a scintilla of evidence. . .
23 .  In fact, the non-moving party must come forth with evidence from which a jury could
24 reasonably render a verdict in the non-moving party's favor."  *Id.* (internal citations omitted).
25 The nonmoving party may defeat the summary judgment motion only by setting forth specific
26 facts that illustrate a genuine dispute requiring a factfinder's resolution.  *Liberty Lobby*, 477 U.S.
27 at 248; *Celotex*, 477 U.S. at 324.  Although the nonmoving party need not produce authenticated
28

evidence, Fed. R. Civ. P. 56(c), mere assertions, pleading allegations, and "metaphysical doubt as to the material facts" will not defeat a properly-supported and meritorious summary judgment motion, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

For purposes of opposing summary judgment, the contentions offered by a *pro se* litigant in motions and pleadings are admissible to the extent that they are based on personal knowledge and set forth facts that would be admissible into evidence, and the litigant attested under penalty of perjury that they were true and correct. *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

**B.     Civil Rights Claims Under § 1983**

42 U.S.C. § 1983 aims "to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights." *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006) (quoting *McDade v. West*, 223 F.3d 1135, 1139 (9th Cir. 2000)). The statute "provides a federal cause of action against any person who, acting under color of state law, deprives another of his federal rights," *Conn v. Gabbert*, 526 U.S. 286, 290 (1999), and therefore "serves as the procedural device for enforcing substantive provisions of the Constitution and federal statutes," *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). Claims under § 1983 require a plaintiff to allege (1) the violation of a federally-protected right by (2) a person or official acting under the color of state law. *Warner*, 451 F.3d at 1067. Further, to prevail on a § 1983 claim, the plaintiff must establish each of the elements required to prove an infringement of the underlying constitutional or statutory right.

### III.     DISCUSSION

Defendants move for summary judgment two grounds. First, they argue that plaintiff cannot prevail because CCDF's postcard-only mail policy is constitutional under the standard set forth in *Turner v. Safley*, 482 U.S. 78 (1987). In the alternative, defendants maintain that plaintiff's individual capacity claims against Furlong and White are barred by qualified immunity. The court addresses each argument in turn.

**A.     Defendants have not shown that CCDF's postcard-only mail policy is rationally connected to a legitimate governmental objective.**

    **1.     First Amendment Standard**

4

The constitutional rights possessed by inmates "are more limited in scope than the constitutional rights held by individuals in society at large." *Shaw v. Murphy*, 532 U.S. 223, 229 (2001). Nevertheless, it is well-established that inmates enjoy a First Amendment right to send and receive mail. *Witherow v. Paff*, 52 F.3d 264, 265 (9th Cir. 1995). Prison officials may restrict that right only so long as the regulations imposed are "reasonably related to legitimate penological interests." *Turner*, 482 U.S. at 89.

In *Turner*, the Supreme Court identified four factors relevant to the reasonableness of a regulation: (1) whether there is a valid, rational connection between the regulation and the legitimate governmental objective behind it; (2) whether alternative means of exercising the right remain available; (3) the impact of an accommodation on prison staff, prison resources, and other inmates; and (4) whether there are ready alternatives that could further the government's objective, and which would suggest that the regulation was an exaggerated response. *Id.* at 90–91. The first of these factors is a sine qua non. *Ashker v. Cal. Dep't of Corrs.*, 350 F.3d 917, 922 (9th Cir. 2003). Therefore, if prison officials fail to show that the regulation at issue is rationally related to a legitimate penological goal, the court need not reach the remaining factors. *Id.* Further, while the court "is required to afford considerable deference to the expertise and decisionmaking of prison administrators," *Prison Legal News v. Cook*, 238 F.3d 1145, 1149 (9th Cir. 2001), it must also be mindful that the *Turner* standard "is not toothless," *Thornburgh v. Abbott*, 490 U.S. 401, 414 (1989) (internal quotation omitted).

### 2. Application

Defendants cite two objectives justifying CCDF's postcard-only policy: (1) to prevent the smuggling of contraband, drugs, and other illegal material into the jail; and (2) to preserve and maximize CCDF resources. (#32 at 7; #32-1 at 3.) The first *Turner* factor requires the court to assess whether these objectives are legitimate and neutral, and whether the postcard-only policy and its objectives rationally relate. *See Ashker*, 350 F.3d at 922.

The level of scrutiny applied depends on the circumstances of the case. *Id.* (citing *Cook*, 238 F.3d at 1150). Initially, the government may demonstrate a rational relationship by showing

a "common-sense connection" between the objective and the regulation. *Id.* (quoting *Frost v. Symington*, 197 F.3d 348, 357 (9th Cir. 1999)). If the plaintiff does not sufficiently refute the connection, defendants are not required to make an evidentiary showing. *Frost*, 197 F.3d at 357. "[P]resuming the governmental objective is legitimate and neutral, *Turner*'s first prong is satisfied." *Id.* (internal citation omitted). If, however, the plaintiff's evidence refutes the common-sense connection, the government must present counter-evidence to demonstrate "that the connection is not so 'remote as to render the policy arbitrary or irrational.'" *Ashker*, 350 F.3d at 922 (quoting *Frost*, 197 F.3d at 357).

Defendants rely heavily on *Covell v. Arpaio*, 662 F. Supp. 2d 1146 (D. Ariz. 2009) and *Perkins v. Demeyo*, No. 2:12-cv-01242-JAD-VCF, 2014 WL 5782769 (D. Nev. Nov. 6, 2014)[2], where challenges to postcard-only policies were dismissed on summary judgment. In *Covell*, defendants' evidence showed that, prior to the policy, the jail system had experienced an increase in the attempted smuggling of contraband. 662 F. Supp. 2d at 1153. Drugs, bodily fluids, and other liquids and powders were concealed under postage stamps, and handcuff keys, metal pieces, and sawblades were concealed in hollowed notepad bindings. *Id.* Plaintiff argued that the smuggling problem was overstated, but offered only speculation and isolated incidents unsupported by facts. *Id.* Thus, the court found that a policy to reduce smuggling via the mail was rationally related to furthering defendants' legitimate goal of enhancing jail security. *Id.*

As in *Covell*, the *Perkins* defendants implemented a postcard-only policy in reaction to a growing number of attempts to smuggle contraband through the mail, and to the substantial staff time deviated from inmate security to mail security. 2014 WL 5782769, at *2. According to the defendants, "[g]lue on postage stamps and envelopes was used to smuggle heroin, phencyclidine (PCP), lysergic acid diethylmaid (LSD) cocaine, body fluids and other substances. Notepad bindings were hollowed for items like handcuff keys, weapons, and saw blades." *Id.* (internal citation omitted). The court found that reducing smuggling was a legitimate goal, and that there

---

[2] *Perkins* appears to be the only case within this district to previously consider a postcard-only mail policy. As an unpublished decision, it does not bind this court.

1  was a common-sense connection between that goal and a policy to limit the kinds of incoming
2  and outgoing inmate mail. *Id.* at *5. It appears that the plaintiff did not present evidence to refute
3  the connection. *Id.* at *5 n.79. Consequently, citing *Covell*, the *Perkins* court concluded that the
4  "first *Turner* factor favor[ed] the defendants." *Id.*

5  Notably, the *Covell* and *Perkins* decisions were supported by concrete evidence
6  connecting defendants' objectives and policies. In contrast, the record currently before the court
7  is devoid of specifics. Furlong's affidavit, the only evidence discussing the reasons for and
8  impact of the postcard-only policy, states:

> 9. CCDF staff has to screen and sort multiple pieces of non-legal and legal mail daily to ensure that contraband, drugs, and other illegal materials are not contained therein.
> 10. Contraband, drugs, and illegal material are regularly intercepted through the mail screening process. . . .
> 12. The postcard-only policy significantly limits the potential avenues by which inmates may attempt to smuggle in contraband, drugs, and other illegal material.
> 13. Eliminating the previous paper and envelope mail policy has allowed CCDF's staff to devote more time to other CCDF security assignments.
> 14. Implementing the postcard-only mail policy has reduced contraband transactions between inmates.

(#32-1 at 3–4.) Defendants leave the court to guess at key details, including the volume of mail
screened, the prevalence of smuggling, the specific "contraband, drugs, and illegal material" at
issue, the manner in which those items are concealed in mail, the time savings achieved, and the
extent to which smuggling has been reduced. In so doing, it would seem that defendants
mistakenly believe they may satisfy *Turner* by showing just "a formalistic logical connection
between [the] regulation and a penological objective." *Beard v. Banks*, 548 U.S. 521, 535 (2006).

Assuming there is a common-sense connection between CCDF's postcard-only policy and
the goals of reducing smuggling and maximizing resources, plaintiff has succeeding in raising
doubts as to the connection's validity. Plaintiff alleges that he has received postcards with stamps
affixed to them. Although defendants do not describe how contraband was entering CCDF, in
both *Covell* and *Perkins* materials were smuggled using the glue on postage stamps. Thus,
supposing that incoming postcards with stamps are indeed permitted, the connection between the
postcard-only policy and reducing smuggling would seem significantly weaker. *See Prison Legal*

*News v. Columbia Cnty.*, 942 F. Supp. 2d 1068, 1086–87 (D. Or. 2013).  Moreover, to the extent that contraband may be contained within an envelope, or within a letter's multiple or folded pages (*see* #44 at 7), defendants make no attempt to explain "why a postcard-only policy is more effective at preventing the introduction of contraband than opening envelopes and inspecting their contents."  *Id.* at 1083.  The court must assess defendants' policy "within the context of the jail's other practices and regulations," *id.* (citing *Cook*, 238 F.3d at 1150), and, in the absence of the postcard-only policy, defendants do not claim CCDF staff would forgo inspections altogether.

Similarly dubious is whether resources are actually conserved by the postcard-only policy.  CCDF does not limit the number of postcards inmates can send or receive.  Given the postcards' limited writing space, the policy could logically increase the overall volume of correspondence that must be inspected each day, and offset the minutes saved by prohibiting letters.  A "*de minimis* savings in time . . . is too small to create a rational connection between the policy and promoting efficiency at [CCDF]."  *See id.* at 1084; *Morrison v. Hall*, 261 F.3d 896, 903 (9th Cir. 2001) ("[T]he 'efficient use of staff time' argument cannot justify an effective ban on non-profit subscription publications.") (citing *Cook*, 238 F.3d at 1151).  Of course, it is entirely possible that the amount of time CCDF staff dedicated to reading and screening letter mail is "completely disproportionate" to that required by postcards.  (*See* #44 at 7.)  However, defendants' evidence— including Furlong's affidavit—does not support such a bold assertion.

It is defendants' burden to present sufficient counter-evidence to persuade the court that CCDF's policy is not arbitrary or irrational.  *See Ashker*, 350 F.3d at 922.  Defendants have failed to do so.  Accordingly, having found that CCDF's policy does not satisfy the first *Turner* factor, the court concludes that plaintiff's First Amendment claim does not fail as a matter of law, and that summary judgment is not warranted on such grounds.  *See Cook*, 238 F.3d at 1151.

**B.     Furlong and White are entitled to qualified immunity.**

**1.     Qualified Immunity Standard**

The doctrine of qualified immunity operates to ensure "that 'officers are on notice their conduct is unlawful' before being subjected to suit."  *Tarabochia v. Adkins*, 766 F.3d 1115, 1121

(9th Cir. 2014) (quoting *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)). Qualified immunity is more than a "mere defense," and acts as "an entitlement not to stand trial or face other burdens of litigation . . ." such as discovery. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Government officials are entitled to qualified immunity, and shielded from liability for damages, unless a plaintiff can demonstrate "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, —, 131 S. Ct. 2074, 2080 (2011).

The plaintiff bears the burden of showing that the right in question was clearly established. *Sorrels v. McKee*, 290 F.3d 965, 969 (9th Cir. 2002). The court's inquiry is an objective one, turning on whether a reasonable official in the defendant's position should have known at the time that his conduct was constitutionally infirm. *Id.* at 2083; *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 915 (9th Cir. 2012). The precise act need not have previously been held unlawful, "but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft*, 131 S. Ct. at 2083. Thus, absent controlling authority, "a robust 'consensus of cases of persuasive authority'" must exist. *Id.* at 2084.

### 2. Application

Plaintiff argues that defendants are not entitled to qualified immunity because, at the time CCDF established its postcard-only policy, district court judges in the Eastern District of Washington and the District of Oregon had found similar postcard-only policies unconstitutional, and the American Civil Liberties Union ("ACLU") of Nevada had sent defendants letters apprising them of the policy's constitutional deficiencies. (#43 at 9.) Plaintiff underestimates the heavy burden imposed by the "clearly established" standard. Prior to November 26, 2012, when CCDF's postcard-only policy went into effect, several courts upheld similar policies. *See, e.g.*, *Covell*, 662 F. Supp. 2d 1146 (granting summary judgment against First Amendment challenge to postcard-only policy); *Gibbons v. Arpaio*, No. CV-07-1456, 2008 WL 4447003 (D. Ariz. Oct. 2, 2008) (same); *Daniels v. Harris*, No. 3:11–CV–45 (CAR), 2012 WL 3901646 (M.D. Ga. Aug. 8, 2012) (denying injunction against postcard-only policy). As such, irrespective of contrary

holdings and the ACLU letters, reasonable officials in Furlong and White's positions would not have understood CCDF's postcard-only policy to be unlawful. Furlong and White are entitled to qualified immunity, and, therefore, summary judgment should be granted as to Furlong and White in their individual capacities.

## IV.  CONCLUSION

For the reasons stated herein, the court recommends that defendants' motion for summary judgment be granted in part and denied in part. Plaintiff's individual capacity claims against Furlong and White are barred by qualified immunity. However, because defendants failed to show that CCDF's postcard-only mail policy is rationally related to a legitimate penological objective, plaintiff's claim should proceed against the remaining defendants.

The parties are advised:

1.  Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2.  This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## V.  RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that defendants' motion for judgment on the pleadings (#32) be **GRANTED** as to Furlong and White in their individual capacities**,** and **DENIED** as to Carson County, the Carson City Sheriff's Department, and Furlong and White in their official capacities.

**DATED**: March 22, 2016.

_____
**UNITED STATES MAGISTRATE JUDGE**